CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

**AUG 25 2017**

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# SEALED

IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF A SEARCH OF: | ) |
| | ) |
| INFORMATION ASSOCIATED WITH | ) |
| @THEBIGBOSS1337, THAT IS STORED | ) |
| AT PREMISES CONTROLLED BY | ) |
| INSTGRAM, LLC | ) |
| | ) |

Case No. 3:17-mj-00047

**UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A WARRANT TO SEARCH AND SEIZE

I, Christopher Hartley, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation ("FBI") and have been so employed since February 2016.  I am assigned to the Washington Field Office, Northern Virginia Resident Agency, located in Manassas, Virginia.  My principal duties include the investigation of, among other matters, civil rights violations of the United States.

2.      I am a federal law enforcement officer under applicable provisions of the United States Code under Rule 41(a) of the Federal Rules of Criminal Procedure.  I have received training in and have experience in the enforcement of the laws of the United States, including the preparation and presentation of search warrants, and in executing court-ordered search warrants.

3.      I make this affidavit in support of an application by the United States of America for a warrant to search and seize evidence associated with Instagram account, **@TheBigBoss1337**, as further described in Attachment A.

1

4.      Based on the information below, I submit there is probable cause to believe the aforementioned Instragram account will contain evidence, as more fully identified in Attachment B, of violations of federal law, including, but not limited to, Title 18, United States Code, Section 249 (Hate Crime).

5.      Through training and experience, the Affiant has knowledge that domestic terrorists and persons affiliated with white supremacists group and/or conspirators will utilize cell phones, and other electronic devices, electronic mail ("e-mail"), social media, and online mobile chat platforms to conduct their illegal activity and maintain contact with other confederates, conspirators and criminal associates involved with the planning, targeting, and execution of their political or social goals to include, but not limited to, espousing violence.

6.      The Affiant bases this affidavit upon personal knowledge and observations made during the course of this investigation, information conveyed to me by other law enforcement officers assigned to this investigation, and upon my personal review of records, documents, and items lawfully obtained by third parties.  This affidavit is not intended to include each and every fact known to me or the other investigating agencies, nor does it reflect all the evidence developed during the course of the investigation.  Instead, the Affiant has set forth sufficient information to establish probable cause for the issuance of the requested search warrant.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part.

## RELEVANT STATUTE

7.    Title 18, United States Code, Section 249, provides that "Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person" shall be guilty of a federal offense.

## JURISDICTION

8.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND

9.    On August 12, 2017, a "Unite the Right" rally was held at Emancipation Park in Charlottesville, Virginia.  The proclaimed purpose of the rally was to protest the removal of the Robert E. Lee and Thomas "Stonewall" Jackson statues in Charlottesville, Virginia.  Several groups espousing right-wing nationalist and/or white supremacist views attended the rally in support.

10.    In addition, several thousand counter-protestors attended the rally to oppose the rally and its supporters.  Throughout the day, several instances of violence occurred between protestors and counter-protestors.  At approximately noon, the rally was declared an unlawful assembly by the Charlottesville Police Department, and both protestors and counter-protestors dispersed to separate locations.

11.     A group observed by law enforcement at the aforementioned rally was Vanguard

America, whose beliefs are stated as:

> *"The chains of debt slavery wrap themselves tight around White*
> *Americans, such conditions must be reversed. A new generation of*
> *corporate leaders, who hold the interests of White America first and*
> *foremost, will naturally rise to the top of this new economy."*

Below is a picture of the Vanguard America emblem taken from the website

https://bloodandsoil.org/:



The right-wing nationalist slogan "blood and soil" is derived from a German phrase, used by

Adolph Hitler's Nazis, that purportedly promotes the notion that people with "white blood" are

uniquely connected to "American soil."

## PROBABLE CAUSE

12.     The FBI is conducting an investigation into possible violations of federal criminal

law committed by JAMES ALEX FIELDS ("FIELDS"), an individual allegedly associated with

Vanguard America and other white supremacist groups.  The investigation was initiated following

receipt of information FIELDS drove this vehicle, a grey Dodge Charger bearing Ohio license

plate GVF1111, into a crowd of people during the "Unite the Right" rally in Charlottesville,

Virginia on August 12, 2017.  The incident killed one Caucasian female and injured approximately

twenty-eight (28) other individuals of African-American and Caucasian descent.

13.     Based on Affiant's review of the video footage of the incident, FIELDS' vehicle travelled at a high rate of speed when it struck rally counter-protestors, including African-Americans.   After striking multiple victims with his vehicle, FIELDS drove his vehicle backwards, in reverse, at high-rate of speed to flee the scene.

14.     After his arrest by the Charlottesville Police Department, FIELDS was observed dressed in a white polo shirt, khaki pants, and black shoes.  FIELDS' hair was trimmed with a "high and tight" or "side-fade" style consistent with the hair style of other individuals associated with the white supremacist group Vanguard America at the rally.  Below is a picture of FIELDS that law enforcement officials obtained from social media at the Charlottesville "Unite the Right" rally.  Fields is second person from the left with the large black shield in front of him.



15.     The Affiant learned from law enforcement officials and review of video footage, one individual was in the vehicle at the time of the aforementioned incident.   After the

Charlottesville Police arrested FIELDS, his vehicle was towed and stored in a secured law enforcement facility.

16.    The Charlottesville Police Department obtained a search warrant for the Dodge Charger and seized one Samsung cellular phone lying on the front passenger seat. The cellular phone was plugged into the outlet and was located as seen below, where it was accessible to the driver of the vehicle. This was the only phone that was recovered in FIELDS's vehicle.



17.    On August 12, 2017, the FBI interviewed SAMANTHA BLOOM ("BLOOM"), a woman identified as FIELDS' mother. BLOOM confirmed details about FIELDS and his trip to Charlottesville, Virginia for the "Unite the Right" rally. According to BLOOM, this information was received by BLOOM from text message sent from FIELDS.

18.     During the interview, BLOOM confirmed FIELDS' telephone number is 859-414-9660.

19.     Through open source research, the FBI identified a suspended Instagram account associated with FIELDS' phone number 859-414-9660. The Instagram account was identified as **@TheBigBoss1337**.

20.     From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

21.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

22.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to

make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

23.      Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

24.      Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

25.      Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and

information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

26.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block a second user, which prevents the blocked user from following that user.

27.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

28.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

29.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

30.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

31.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses

cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

32.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

33.     Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

34.     Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

35.     On August 13, 2017, the FBI served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the Instagram account **@TheBigBoss1337**.

36.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared

photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation.

37. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38. Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the Instagram account **@TheBigBoss1337**, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP

11

addresses and devices used to access the account, as well as other account information that might

be used to identify the actual user or users of the account at particular times.

## CONCLUSION

39.     Based on the forgoing, I request that the Court issue the proposed search warrant.

Because the warrant will be served on Instagram who will then compile the requested records at a

time convenient to it, reasonable cause exists to permit the execution of the requested warrant at

any time in the day or night.

Christopher J. Hartley
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 25th of August, 2017.

United States Magistrate Judge

12